## CITY OF SPRINGFIELD *vs.* SAMUEL HARRIS.

The owner of land over which a natural stream of water flows has a right to the reasonable use of the water for mills or other purposes, whatever may be the effect upon the owners of lands below; and he is not liable to an action for obstructing and using the water for his mill, if it appears that his dam is only of such magnitude as is adapted to the size and capacity of the stream and to the quantity of water usually flowing therein, and that his mode of using the water is not unusual or unreasonable, according to the general custom of the country in cases of dams upon similar streams.

TORT for the obstruction of a natural stream of water, by means of a dam.

At the trial in the superior court, before *Vose*, J., there was evidence to show the uses which the plaintiffs have heretofore made of the water of the stream, where it crosses Main Street in the city of Springfield, below the defendant's land, and the method in which the defendant has used and obstructed the same ; and it was a question in dispute whether the plaintiffs had established a title to Main Street. Upon the evidence in respect to the latter question, the facts not being denied, the judge ruled that the plaintiffs had not made out their title, and

he directed the jury to return a verdict for the defendant, and also to answer the two following questions : " 1. Is the dam of the defendant of such magnitude as is adapted to the size and capacity of the stream, and to the quantity of water usually flowing therein ? 2. Is the mode of using the dam by the defendant, by closing the gate at night for the purpose of letting the pond fill, an unusual and unreasonable use, according to the general custom of the country in cases of dams upon similar streams ? " The judge instructed the jury that, in answering these questions, they were to decide as practical men, upon the evidence in the case, with their judgments aided by the testimony of the experts, and the evidence relative to the general usage or custom of the country, or to dams upon similar streams, and by their own view of the premises, and that they were not to take into view the rights claimed by the plaintiffs in determining the facts involved in these inquiries.

The plaintiffs made no objections to these instructions, and did not ask for any others; and the jury answered the first question in the affirmative, and the second in the negative.

To the ruling of the judge directing the jury to return a verdict for the defendant, the plaintiffs alleged exceptions.

*N. A. Leonard,* for the plaintiffs.

*J. Wells,* for the defendant.

MERRICK, J.* It appears from the pleadings and from the facts stated in the bill of exceptions, that Garden Brook is a natural stream running by and over the land of the defendant, and thence through Main Street in the city of Springfield. The plaintiffs claim to be owners in fee of all the land included within the limits of said street, and that they are entitled to have the water flow in said stream at all times without obstruction, in order that they may use it, as they have a right to do, for sewerage, for extinguishing fires, and for all other purposes essential to the health and safety of the city. The defendant is the owner and occupant of a mill standing upon his said land; and he admits that during the whole period in which

---

* CHAPMAN, J. did not sit in this case.

the obstruction complained of is alleged to have occurred, he has, in operating his mill and the works contained in it, used the water of said stream by means of a dam, which for that purpose he has erected and maintained across it. The plaintiffs in their declaration allege that this dam was and is " of a larger magnitude than is adapted to the size and capacity of the stream, and to the quantity of water usually flowing therein." And, this is the particular grievance of which they complain, and which they set forth as their cause of action against the defendant.

The action can be maintained only by the proof of this material allegation; for the defendant had a right to use the water in a reasonable and lawful manner to work and operate his mill, whatever might be the effect of such use in reference to any easement to which proprietors of land situate at any point below it might otherwise be entitled. Each proprietor of land through which a natural watercouse flows has a right as owner of such land, and as inseparably connected with and incident to it, to the natural flow of the stream for any hydraulic purpose to which he may think fit to apply it; and it is a necessary consequence from this principle that such proprietor cannot be held responsible for any injurious consequences which result to others, if the water is used in a reasonable manner, and the quantity used is limited by, and does not exceed, what is reasonably and necessarily required for the operation and propulsion of works of such character and magnitude as are adapted and appropriate to the size and capacity of the stream and the quantity of water usually flowing therein. *Thurber* v. *Martin*, 2 Gray, 394. *Gould* v. *Boston Duck Co.* 13 Gray, 442. *Tourtellot* v. *Phelps*, 4 Gray, 376.

The jury having found, under instructions in matter of law which are admitted to have been correct and unobjectionable, that the plaintiffs have failed to establish the material allegations in their declaration relative to the dam erected and maintained by the defendant across the stream, and having also found that the said dam is only of such magnitude as is adapted to the size and capacity of the stream and to the quantity of water

usually flowing therein, and that the manner in which he used the water was not an unusual or unreasonable use of it, according to the general custom of the country in cases of dams upon similar streams, it is obvious that the plaintiffs were not entitled to recover any damages, and therefore that the verdict was properly rendered for the defendant.

It is objected that the court erred in ruling that the plaintiffs had not upon the evidence shown that they had acquired any prescriptive right to the water in the brook, and in directing the jury for that reason to return a verdict for the defendants. It would have been more regular to reserve these directions, which were predicated wholly upon questions of law, and to submit to the jury the questions of fact in issue, which were specially submitted to them with instructions that if they found the first in the affirmative and the second in the negative, they should in that case render a verdict for the defendant. But as we do not perceive that the plaintiffs were at all prejudiced or subjected to any disadvantage by the course pursued, such irregularity affords no sufficient cause for disturbing the verdict, which was rendered exclusively upon particular questions of fact which were wholly independent of and distinct from the questions of law. And as the finding of the jury upon those particular questions makes it certain that the plaintiffs could in no event maintain their action, it becomes unnecessary to consider whether the ruling of the court in relation to the plaintiffs' alleged title was correct; for whether they owned the soil, or had acquired any prescriptive right to the use of the water, or were mere riparian proprietors, it is obvious that judgment must necessarily upon the finding of the jury upon those questions of fact be rendered for the defendant. *Exceptions overruled.*